**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: COMMONWEALTH'S MOTION : | |
| TO APPOINT NEW COUNSEL : | |
| AGAINST OR DIRECTED TO DEFENDER : | |
| ASSOCIATION OF PHILADELPHIA : | MISCELLANEOUS ACTION |
| COMMONWEALTH OF PENNSYLVANIA, : | |
| : | NO. 13-62 |
| v. : | |
| : | |
| FRANCIS BAUER HARRIS. : | |

**MEMORANDUM OPINION**

RUFE, J.                                          AUGUST 22, 2013

This matter comes before the Court having been removed by the Federal Community

Defender Organization ("FCDO") from the Lancaster County Court of Common Pleas.[1]  On

February 11, 2013, prior to removal, Pennsylvania Attorney General Kathleen G. Kane filed a

Motion to Appoint Counsel in the underlying Post-Conviction Relief Act ("PCRA") proceeding,

Commonwealth v. Harris, No. CP-36-CR-0000672-1997 (the "Disqualification Motion").  In the

Disqualification Motion, the Commonwealth seeks to disqualify Defendant Francis Bauer

Harris's FCDO counsel from representing Mr. Harris in his state court PCRA proceedings on the

grounds that such representation violates federal law.  Without removing the underlying PCRA

proceeding, the FCDO removed the Disqualification Motion to this Court and thereafter, filed a

Motion to Dismiss, arguing that the Commonwealth is without standing to enforce the statute

under which it seeks to disqualify FCDO counsel.  The Commonwealth then filed a Motion to

Remand, asserting that the Federal Officer Removal Statute, 28 U.S.C. § 1442, pursuant to which

the Disqualification Motion was removed, does not allow removal in this case.  The Court held

_____

[1]  Notice of Removal [Doc. No. 2] at 1.

oral argument on the pending motions and permitted supplemental briefing.  The Motion to

Remand and the Motion to Dismiss are now ripe for disposition.

I.    BACKGROUND

A.    **Background of Francis Bauer Harris's Criminal Proceedings**

Francis Bauer Harris was convicted of first degree murder on October 4, 1997, in the

Lancaster County Court of Common Pleas, and after a penalty phase proceeding, was sentenced

to death.[2]  On November 20, 2002, the Pennsylvania Supreme Court affirmed the conviction and

sentence, and on December 8, 2003, the United States Supreme Court denied a Petition for Writ

of Certiorari.[3]  On March 15, 2004, then-Governor Edward Rendell signed a death warrant,

which scheduled Mr. Harris's execution for May 13, 2004.

Mr. Harris petitioned this Court for a stay of execution, and at the same time, requested

leave to proceed *in forma pauperis* and asked that counsel be appointed to represent him.[4]  The

matter was docketed as a capital habeas petition at Civil Action No. 04-1237, on March 22,

2004.  By Order dated March 29, 2004, after a telephone conference with FCDO counsel and the

Lancaster County District Attorney's Office, this Court stayed Mr. Harris's execution, granted

his motion to proceed IFP, and pursuant to 21 U.S.C. § 848(q)(4)(B), appointed the FCDO "to

represent Petitioner [Harris] in his to-be-filed Petition for Writ of Habeas Corpus."[5]

---

[2]  Doc. No. 2 ¶ 4.

[3]  Id. ¶ 5 (citing Commonwealth v. Harris, 817 A.2d 1033 (Pa. 2002) and Harris v. Pennsylvania, 540 U.S. 1081 (2003)).

[4]  Harris v. Beard, Civ. A. No. 04-1237, Doc. No. 1.

[5]  Civ. A. No. 04-1237, Doc. No. 4 ¶ 2.

FCDO counsel then filed a Petition for Writ of Habeas Corpus in this Court on Mr. Harris's behalf on October 12, 2004.[6]  On November 22, 2004, FCDO attorneys also filed a PCRA petition in the Lancaster County Court of Common Pleas on Mr. Harris's behalf.[7]  The Court thereafter granted Mr. Harris's Motion to place the federal habeas proceeding in suspense pending exhaustion of state court remedies, stating that it would revisit the issue of whether suspense or dismissal without prejudice was warranted during the pendency of the state proceedings.[8]  By Opinion and Order dated September 22, 2005, the Court dismissed the Petition without prejudice pending exhaustion of state court remedies.[9]

Litigation in Mr. Harris's underlying state post-conviction proceedings has been ongoing since that time.  On February 11, 2013, the Commonwealth for the first time raised an objection to the FCDO's representation of Mr. Harris in state court, filing the Disqualification Motion that is the subject of these proceedings.

**B.    Background of What the FCDO Calls "The Commonwealth's Campaign Against the FCDO"**

The FCDO asserts that following a concurring opinion by the Chief Justice of the Pennsylvania Supreme Court in an unrelated criminal appeal, which questioned whether FCDO attorneys may appear in PCRA proceedings,[10] the Office of the Philadelphia District Attorney petitioned the Pennsylvania Supreme Court to exercise its "King's Bench Jurisdiction" pursuant to 42 Pa. C.S. § 726 to bar FCDO attorneys from appearing in any PCRA proceedings, based on the FCDO's purported improper use of federal funds in representing defendants in these

---

[6]  Civ. A. No. 04-1237, Doc. No. 12.

[7]  Doc. No. 2 ¶ 9.

[8]  Civ. A. No. 04-1237, Doc. No. 19.

[9]  Civ. A. No. 04-1237, Doc. Nos. 25, 26.

[10]  Commonwealth v. Spotz, 18 A.3d 244, 329-49 (Pa. 2011) (Castille, C.J., concurring).

3

proceedings.  The FCDO removed the King's Bench Proceeding to federal court on December 8, 2011; six days later the Commonwealth voluntarily dismissed the petition.[11]  After voluntary dismissal of the King's Bench Proceeding, the Commonwealth, through various county District Attorney's Offices and the Office of the Attorney General, continued to pursue the objective of the King's Bench Proceeding through piecemeal litigation, challenging the appearance of FCDO counsel in several individual, capital PCRA proceedings (including that of Mr. Harris).

On January 10, 2013, the Pennsylvania Supreme Court issued a *per curiam* order in Commonwealth v. Mitchell, No. 617,[12] in which it remanded a case to the PCRA court to determine whether the FCDO could continue to represent the defendant in PCRA proceedings. The Pennsylvania Supreme Court instructed the PCRA court, on remand, to determine whether the FCDO used any federal grant monies to support its activities and directed that if the FCDO could not demonstrate that all of their actions in PCRA court were privately financed, counsel should be removed.[13]

Following the Mitchell remand, the Attorney General filed the Disqualification Motion in Mr. Harris's PCRA proceedings.[14]  In the Motion, the Commonwealth asserts that pursuant to 18 U.S.C. § 3599, the FCDO may not represent Mr. Harris in his PCRA proceeding and citing Mitchell, argues that the PCRA court should hold a hearing to determine whether the FCDO has used or will use federal grant money to support its state court activities.  The FCDO timely removed the Motion to this Court.  This case is one of several cases removed by the FCDO to

---

[11]  E.D. Pa. Civ. A. No. 11-7531 (Dalzell, J.).

[12]  Commonwealth v. Mitchell, CP-51-CR-0204961-1998, D56/1 (see Exhibit 4 to FCDO's Mot. to Dismiss [Doc. No. 5]).

[13]  Id.

[14]  Commonwealth's Motion to Appoint Counsel ("Disqualification Motion"), [Doc, No. 2, Ex. A].

federal court after the Commonwealth filed a disqualification motion citing improper use of federal funds.[15]

### C.    Background of the Criminal Justice Act

The Criminal Justice Act ("CJA"),[16] was enacted "to promote the cause of criminal justice by providing for the representation of defendants who are financially unable to obtain an adequate defense in criminal cases in the courts of the United States."[17]  The CJA authorizes, *inter alia*, the appointment of counsel for indigent inmates seeking habeas corpus relief under 28 U.S.C. § 2254,[18] and makes appointment mandatory for those indigents seeking relief from a death sentence.[19]  Pursuant to the CJA, each federal district court must implement a plan for the furnishing of this representation; the plan may establish a federal "Community Defender Organization" ("CDO"), "a nonprofit defense counsel service established and administered by any group authorized by the plan to provide representation."[20]  The Federal Community Defender Organization ("FCDO") appearing in the instant case is one such organization and is a division of the Defender's Association of Philadelphia.

---

[15]  See, e.g., E.D. Pa. Civ. A. Nos. 13-1871 (McLaughlin, J.), 13-2242 (Schiller, J.), M.D. Pa. Civ. A. Nos. 13-510, 13-511, 13-561 (Caputo, J.).  As of the date of this Opinion, Judge McLaughlin and Judge Caputo have filed opinions on the motions to remand in their respective cases.

[16]  18 U.S.C. § 3006A.

[17]  S. Rep. No. 88-346 (1963), *reprinted in* 1964 U.S.C.C.A.N. 3000, 3000.

[18]  18 U.S.C. § 3006A(a)(2)(B).

[19]  18 U.S.C. § 3599(a)(2).

[20]  18 U.S.C. § 3006A(g)(2)(B).  The Defender Association of Philadelphia's Federal Court Division is a CDO within the meaning of 18 U.S.C. § 3006A(g)(2)(B). The Federal Court Division of the Defender Association of Philadelphia is often referred to as the "Federal Community Defender Organization, Eastern District of Pennsylvania" or "FCDO" for short.  For purposes of these proceedings, "FCDO" will denote the Federal Court Division of the Defender Association.  While CDO's, like the FCDO, are established pursuant to § 3006A(g)(2)(B), federal public defender organizations are established pursuant to § 3006A(g)(2)(A).

The CJA requires that counsel be appointed for an indigent defendant "[i]n any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence."[21]  It further requires that each United States district court implement a plan for furnishing representation in accordance with the CJA, and authorizes the Judicial Conference of the United States to issue rules and regulations governing the operation of such plans.[22]  The United States District Court for the Eastern District of Pennsylvania's Plan authorizes the FCDO to provide representation to persons so entitled under the CJA, and FCDO attorneys are required to abide by CJA Guidelines.[23]

In addition to representing federal criminal defendants and capital defendants in § 2254 proceedings, FCDO attorneys appear on behalf of federal clients in PCRA proceedings before Pennsylvania state courts.  They do so either (1) on the purported authority of a federal court order to exhaust their client's state court remedies or (2) as Pennsylvania-barred attorneys appointed by the PCRA court or retained by a defendant to provide representation on a *pro bono* basis.  The FCDO asserts that the research and investigation of federal claims, which are essential to federal habeas representation, may be compensated with CJA funds even where the work is done in the PCRA proceedings, before a federal habeas petition is filed.  However, work that need not be undertaken to provide federal habeas representation (such as appearing at state court hearings) is not compensated with CJA funds and instead, is underwritten by private funds or furnished *pro bono* with the knowledge and approval of the Administrative Office ("AO") of the United States Courts.

---

[21]  18 U.S.C. § 3599(a)(2).

[22]  18 U.S.C. § 3006A(a), (h).

[23]  See Guide to Judiciary Policy, Vol. 7, Pt. A (2011), *available at* http://www.uscourts.gov/FederalCourts/AppointmentOfCounsel/CJAGuidelinesForms/GuideToJudiciaryPolicyVolume7.aspx; see also Exhibit 3 to FCDO's Mot. to Dismiss [Doc. No. 5-6].

Under the CJA, appropriations are "made under the supervision of the Director of the [AO]"[24] who carries out that responsibility under the direction of the Judicial Conference of the United States.[25]  The AO has enacted a comprehensive regulatory scheme governing the appointment of counsel and compensation, and the conditions attached to the FCDO's receipt of federal funds.[26]  The AO Guidelines require segregation of grant funds from private funds, return of unused funds to the AO, and the submission of annual reports regarding the grantee's activities, financial position, and anticipated caseload and expenses for the next fiscal year.[27]  Grantees are required to keep detailed financial records and are audited by the AO each year to ensure compliance with the terms and conditions of the grant award.[28]  If the grantee fails to comply with the terms and conditions of the grant award, the AO is empowered to reduce, suspend, terminate, or disallow further payments.[29]

## II.    MOTION TO REMAND

### A.    Legal Standard for Removal

The FCDO filed its Notice of Removal pursuant to 28 U.S.C. § 1442, which provides in pertinent part:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the

---

[24]  18 U.S.C. § 3006A(i)

[25]  18 U.S.C. § 3006A(g)(2)(B).

[26]  See AO Guidelines, Ex. 3 to the Mot. to Dismiss.

[27]  Id. at 2-3.

[28]  Id. at 4.

[29]  Id. at 9.

> United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.[30]

Section 1442, commonly referred to as the "Federal Officer Removal Statute," authorizes the removal of any ancillary civil proceeding, separate and apart from an underlying action, if such proceeding is directed to or against a federal officer, or person acting under a federal officer, for conduct relating to any act done under color of the office.[31]  "Although the general removal statute, 28 U.S.C. § 1441, is to be strictly construed in favor of state court adjudication, the federal officer removal statute, 28 U.S.C. § 1442, upon which removal was premised in this matter, should be broadly construed in favor of a federal forum."[32]

To establish removal jurisdiction under section 1442(a)(1), the removing party, here the FCDO, "must establish that (1) it is a 'person' within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct 'acting under' a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office."[33]  Additionally, the removing party must establish that the removed action is a "civil action," as defined by § 1442(d)(1), directed at the removing party, and which is removed without removing the underlying action.

---

[30] 28 U.S.C. § 1442(a)(1).

[31] See, e.g., Vedros v. Northrop Grumman Shipbuiding, Inc., No.  11-67281, 2012 WL 3155180, at *2 (E.D. Pa. Aug. 2, 2012).

[32] Calhoun v. Murray, 507 F. App'x 251, 260 (3d Cir. 2012) (citing Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985) and Sun Buick, Inc. v. Saab Cars USA, Inc., 26 F.3d 1259, 1262 (3d Cir. 1994).

[33] Feidt v. Owens Corning Fiberglas Corp., 153 F.3d 124, 127 (3d Cir. 1998) (citing Mesa v. California, 489 U.S. 121, 129 (1989)).

**B.      Discussion**

The final two requirements need little discussion.  It is without question that the FCDO

removed only the Disqualification Motion and not the underlying criminal prosecution, and that

it is a "civil action" before this Court.  Although the Commonwealth maintains that the

Disqualification Motion is directed to Mr. Harris, not the FCDO, because it seeks to have

counsel appointed to represent Mr. Harris, the Motion is more reasonably read as a motion to

disqualify the FCDO, which is directed at the FCDO itself (since Mr. Harris is already

represented by the FCDO, there is no need to have counsel appointed unless the FCDO is

disqualified).

The crux of the dispute between the parties concerns whether the FCDO, as a private

nonprofit organization, "acts under" a federal officer or agency for the purpose of § 1442

removal.[34]  The Commonwealth argues that the FCDO does not act under a federal agency when

it appears in state court, and therefore removal would never be proper with respect to FCDO

state court representation.  The Commonwealth's argument, however, overreaches.

A private person is "acting under" a federal officer or agency for the purpose of the

federal officer removal statute where such person's efforts "assist, or [] help carry out, the duties

or tasks of the federal superior."[35]  Accordingly, courts have held that "attorneys employed by

organizations conducting federally-funded legal assistance programs for [] indigent [persons] act

---

[34]  It is undisputed that the FCDO is part of the Defender's Association of Philadelphia, an independent, non-profit corporation.  Corporate persons are "persons" within the meaning of the statute.  Bouchard v. CBS Corp., No. 11-66270, 2012 WL 1344388, at *9 (E.D. Pa. Apr. 17, 2012).  Therefore, the FCDO is a "person" for the purpose of the Court's analysis.  The Commonwealth does not argue to the contrary.

[35]  Watson v. Philip Morris Cos., 551 U.S. 142, 152 (2007) (emphasis omitted).

9

under officer of the United States within the meaning of the removal statute."[36]  Here, the FCDO
provides a service to indigent defendants that the "Government itself would [otherwise] have had
to perform," and thus, acts under a federal officer or agency for the purpose of the federal officer
removal statute.[37]

The Commonwealth argues that there is no causal nexus between the claims and the
conduct performed under color of the federal office; that is, even assuming the FCDO may at
times "act under" a federal officer or agency, it does not do so when appearing in state court
PCRA proceedings, which must be exhausted before a federal habeas petition may be filed.
While the Court recognizes the basic logic of this argument, it fails to defeat removal here.

The "'under color of office' [requirement is] meant . . . to preserve the pre-existing
requirement of a federal defense for removal,"[38] and here, the FCDO's defense itself shows the
causal nexus that exists between the claims and the conduct performed under color of the federal
office.  According to the FCDO, its state court activities are mixture of federally funded
activities and privately funded activities; the aspect of state court representation that is done in
preparation of the federal habeas petition is permitted by § 3599, and is performed "under color"
of a federal office.  Therefore, in asserting this defense, the FCDO satisfies both the "causal
nexus" and the "federal defense" requirements of the removal statute.

The viability of the FCDO's defense is of no moment in the determination of whether
removal is proper as the Supreme Court does not require the removing party to "win [its] case

---

[36] Dixon v. Georgia Indigent Legal Servs., Inc.. 388 F. Supp. 1156, 1161 (S.D. Ga. 1974), *aff'd* 532 F.2d
1373 (5th Cir. 1976); see also Gurda Farms, Inc. v. Monroe County Legal Assistance Corp., 358 F. Supp. 841
(S.D.N.Y. 1973).

[37] Watson, 551 U.S. at 154.

[38] Mesa, 489 U.S. at 135.

before [it] can have [the case] removed."[39]  Additionally, the Supreme Court has rejected a

"narrow, grudging interpretation" of the federal officer removal statute, recognizing the

importance of federal defenses being determined in a federal court.[40]  While the Court recognizes

"strong judicial policy against federal interference with state criminal proceedings,"[41] the Court

finds that in this case, public policy favors having a federal entity interpret this federal defense,

particularly as there is no interference with the state courts' determination of the merits of Mr.

Harris's PCRA Petition.

Despite the Commonwealth's insistence that the state court's interest in regulating the

practice of law is paramount and warrants remand, removal does not prevent the Courts of the

Commonwealth from regulating the practice of law.  If the FCDO's appearance in state court

were to violate Pennsylvania Supreme Court ethical rules, disqualification or other disciplinary

action may be taken by an authorized body.  Here, the Commonwealth does not advance any

independent state ethical rule that prohibits the FCDO from representing Mr. Harris in his PCRA

proceedings; disqualification is sought solely on the basis of a federal funding statute.  To the

extent the general state interest in regulating the practice of law may be implicated, it is

insufficient to override the policy underlying federal officer removal statute which supports

removal in this matter.

---

[39] Jefferson Cnty. v. Acker, 527 U.S. 423, 431 (1999) (internal quotation omitted).

[40] See id.; see also Mesa, 489 U.S. at 126 ("[T]he Federal Government can act only through its officers and agents, and they must act within the States. If, when thus acting, and within the scope of their authority, those officers can be arrested and brought to trial in a State court, for an alleged offense against the law of the State, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection,-if their protection must be left to the action of the State court,-the operations of the general government may at any time be arrested at the will of one of its members.") (internal quotation marks and citation omitted).

[41] Mesa, 489 U.S. at 138 (internal quotation omitted).

11

C.      Abstention

The Commonwealth argues that even if the Court finds that removal is proper under the federal officer removal statute, Younger Abstention prohibits removal.[42]  The FCDO asserts that the Commonwealth's Younger argument is misplaced because according to the FCDO, the jurisdiction conferred by § 1442 is mandatory and therefore, the doctrine does not apply in the § 1442(a) context.

Younger Abstention, named for Younger v. Harris,[43] requires that a federal court abstain "in certain circumstances from exercising jurisdiction over a claim where resolution of that claim would interfere with an ongoing state proceeding."[44]  The doctrine "reflects a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances."[45]  Younger Abstention is appropriate "only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims."[46]  "Even when the three-prong test is met, Younger abstention is not appropriate when '(1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist . . . .'"[47]

---

[42] See Doc. No. 7 at 21-30.

[43] 401 U.S. 37 (1971).

[44] Miller v. Mitchell, 598 F.3d 139, 145 (3d Cir. 2010).

[45] Hill v. Barnacle, No. 13-1205, 2013 WL 1760898, at *1 (3d Cir. Apr. 25, 2013) (quoting Gwynedd Properties, Inc. v. Lower Gwynedd Twp., 970 F.2d 1195, 1199 (3d Cir. 1992) (internal quotation marks omitted)).

[46] Miller, 598 F.3d at 146 (quoting Kendall v. Russell, 572 F.3d 126, 131 (3d Cir. 2009) (internal quotation marks omitted)).

[47] Lazaridis v. Wehmer, 591 F.3d 666, 670 n.4 (3d Cir. 2010) (quoting Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989) (omission in original)).

Neither party has cited and the Court's research revealed no cases in which a court applied Younger Abstention in the context of federal officer removal.  The Commonwealth states that "[i]n the absence of guidance from the Supreme Court, there is no clear indication that Younger does not apply to cases that have been removed,"[48] citing two cases, one from the Fourth Circuit,[49] the other from the Sixth Circuit,[50] in which Younger Abstention was applied in removed cases.  Both cases, however, involved removal pursuant to 28 U.S.C. § 1441, the general removal statute.  This argument is not persuasive in the context of federal officer removal because it does not address the countervailing policy of the federal officer removal statue.  In fact, the Fourth Circuit has held that "the removal jurisdiction granted by § 1442(a), which is designed to protect federal employees against local prejudice, is mandatory, not discretionary, and a district court has no authority to abstain from the exercise of that jurisdiction on any ground other than the two specified in 1447(c)."[51]  Accordingly, the Court should be hesitant to apply Younger abstention in the context of § 1442 removal.

However, the Court need not decide whether Younger Abstention could ever apply to a case removed pursuant to § 1441 because in this case, the state court's interest in deciding the Disqualification Motion, is outweighed by the federal interest in interpreting this federal funding statute.  As stated above, the Court is not persuaded by the Attorney General Office's attempts to advance "regulation of the practice of law" as the important state interest warranting remand or abstention.  This Court's decision to allow removal does not prohibit the Pennsylvania Supreme

---

[48] Doc. No. 22 at 7 (quoting Daniel C. Norris, *The Final Frontier of Younger Abstention: The Judiciary's Abdication of the Federal Court Removal Statute*, 31 Fla. St. U. L. Rev. 193, 219 (2003)).

[49] Emp'rs Res. Mgmt. Co. v. Shannon, 65 F.3d 1126 (4th Cir. 1995).

[50] Lutz v. Calme, No. 98-6570, 1999 WL 1045163 (6th Cir. Nov. 9, 1999).

[51] Jamison v. Wiley, 14 F.3d 222, 239 (4th Cir. 1994) (citation omitted).

Court from regulating which attorneys may practice law in Pennsylvania or the conduct of attorneys who practice there to the extent such attorneys engage in unethical behavior or otherwise fail to comply with court rules.  The Commonwealth herein seeks disqualification solely on the basis of a federal funding statute and in this context, abstention is not warranted.[52]

### D.    Conclusion

For the foregoing reasons, the Court finds that removal pursuant to 28 U.S.C. § 1442 was proper.  Accordingly, the Motion to Remand will be denied.

## III.    FCDO's MOTION TO DISMISS

Having determined that the case is properly before the Court, the FCDO's Motion to Dismiss must be considered.  The FCDO argues that the Disqualification Motion should be dismissed because § 3599, pursuant to which the Commonwealth seeks to disqualify the FCDO, does not provide a private right of action.  The Commonwealth responds that it need only demonstrate that it generally has standing to file a disqualification motion is state criminal proceedings, not that it has standing to bring a claim pursuant to § 3599.

---

[52]   Though the Court will not go so far as to say that "the state proceedings are being undertaken in bad faith or for purposes of harassment," see Lazaridis, 591 F.3d at 670 n.4, the Court notes that it appears that the success of the Commonwealth's  Disqualification Motion would likely be detrimental to state court interests.  As the FCDO states in its Brief in Opposition to the Motion to Remand:

> If the Commonwealth were to succeed in removing the FCDO, Mr. Harris would be entitled to new representation pursuant to Pennsylvania Rule of Criminal Procedure 904(H), a fact the Commonwealth does not dispute. That representation would be at the expense of the Commonwealth or Lancaster County or both and would result in protracted delay of the PCRA proceedings while new counsel learns the facts and undertakes an investigation into Mr. Harris's federal claims.

Doc. No. 27 at 31.

In its Disqualification Motion, the Commonwealth defines the question at issue in the Motion as "whether FCDO, a *federal* entity, can represent a *state* court litigant."[53]  The Motion goes on to state "a background of the issue," and in doing so, begins with the text of 18 U.S.C. § 3599, arguing that the statute permits appointment of counsel in § 2554 and "every subsequent stage of available judicial proceedings" but that "[a]n initial PCRA petition cannot legally be considered a 'subsequent stage of available judicial proceedings' to federal habeas corpus proceeding under 28 U.S.C. § 2254," and therefore, "there is no federal action or federal appointment order authorizing FCDO's representation of Harris."[54]  The Commonwealth further states that the state court to which the motion is directed "has the authority to enforce federal law and remove the FCDO"[55] and appoint new counsel.

It is evident, from this last statement in particular, that the purpose of the Motion is to disqualify the FCDO based on federal law.  The Motion seeks to disqualify the FCDO because, according to the Commonwealth, such representation is not permitted by virtue of a federal statute.  Said differently, it is a suit to enforce § 3599.  While the Commonwealth argues that the FCDO "mischaracterizes" its motion as seeking an adjudication of the use of federal funds when the real "thrust" of its motion is the propriety of FCDO representation in state court, this does not alter the conclusion that the Motion "is in essence a suit to enforce the statute itself."[56]  The question thus becomes whether the Commonwealth has standing to seek enforcement of § 3599.  The Court finds that it does not.

---

[53] Disqualification Motion ¶ 5.

[54] Disqualification Motion ¶¶ 9, 15.

[55] Disqualification Motion ¶ 10.

[56] Astra USA, Inc. v. Santa Clara Cnty., 131 S. Ct. 1342, 1348 (2011).

15

"Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress."[57]  Because of this, the Third Circuit "employ[s] a two-step inquiry for determining whether a private right of action exists under a federal statute: (1) whether Congress intended to create a personal right in the plaintiff; and (2) whether Congress intended to create a personal remedy for that plaintiff."[58]  A party asserting a violation of a federal statute "must address both aspects of this rights-remedies dichotomy."[59]  In the absence of an express private right of action, courts may infer an implied private right of action only if both aspects of this dichotomy have been satisfied.[60]  Where, as here, a statute provides for "agency enforcement" (that is, delegation to a federal agency to enforce the law), it "creates a strong presumption *against* implied private rights of action."[61]  The two-step inquiry applies to states as well as private parties seeking implied rights of action.[62]

Here, the Commonwealth does not make any effort to argue that an explicit or implied right of action may be read into § 3599, as it surely cannot given the strong presumption against an implied private right of action in this case.[63]  Rather, the Commonwealth argues that the foregoing principles do not apply in this case because the FCDO created this action by removing it to federal court.  Given that this is not "a traditional civil action commenced via a complaint in state court," and instead is a motion filed during the course of state criminal proceedings, the

---

[57] McGovern v. City of Philadelphia, 554 F.3d 114, 116 (3d Cir. 2009) (citing Touche Ross & Co. v. Redington, 442 U.S. 560, 578 (1979)).

[58] Id.

[59] Id.

[60] Id.

[61] Wisniewski v. Rodale, Inc. , 510 F.3d 294, 305 (3d Cir. 2007) (emphasis added).

[62] See New Jersey Dep't of Envtl. Protection & Energy v. Long Island Power Auth., 30 F.3d 403, 421 n.34 (3d Cir. 1994).

[63] See Wisniewski, 510 F.3d at 305.

Commonwealth asserts that it need only show that it has the authority to seek "a court order concerning whether the FCDO can be appointed to represent a state PCRA petitioner before federal habeas corpus review."[64]  The Court disagrees.

The Commonwealth cannot evade Congressional limits on the enforcement of federal law by characterizing its motion as a disqualification proceeding where the disqualification sought is solely based on federal law.  Restrictions on private rights of action apply whenever a party is "in substance" attempting to enforce a provision of federal law.[65]  Because the Commonwealth seeks to do just that, it must show that it has a right to do so.  The Commonwealth has not made this showing and thus, the private right of action doctrine prevents it from raising its claims.

Both parties advance several policy arguments in support of their respective positions, with the Commonwealth again advancing the state court's interest in regulating the practice of law.  The Court, however, does not interpret the Commonwealth's argument to be that the FCDO attorneys representing Mr. Harris are not authorized to practice law in Pennsylvania or are otherwise in violation of Pennsylvania Supreme Court's ethical rules.  The only basis for disqualification is the Commonwealth's construction of a federal funding statute, and the state has not established its interest in ensuring that any federal funds are properly expended. Additionally, the Court is mindful that it "must prevent litigants from using motions to disqualify opposing counsel for tactical purposes."[66]  Disqualification is a harsh measure, and "motions to disqualify opposing counsel generally are not favored."[67]

---

[64] Doc. No. 10 at 15.

[65] See Astra USA, Inc., 131 S. Ct. at 1345.

[66] Hamilton v. Merill Lynch, 645 F. Supp. 60, 61 (E.D. Pa. 1986).

[67] Commw. Ins. Co. v. Graphix Hot Line, Inc., 808 F. Supp. 1200, 1203 (E.D .Pa. 1992) (internal quotation omitted).

The Court recognizes that the effect of its decision is to foreclose review of the scope of representation permitted under § 3599 in state-court PCRA proceedings.  However, recognizing the Commonwealth's right to proceed in this instance "could spawn a multitude of dispersed and uncoordinated lawsuits" by state actors seeking to disqualify opposing counsel in death penalty proceedings, and "the risk of conflicting adjudications would be substantial."[68]

Given that § 3599 does not provide the Commonwealth the private right of action to enforce the statute and in an effort to discern the policy and motivation underlying the filing of these disqualification motions, the Court, during oral argument, questioned the Commonwealth regarding the impetus for filing these motions.  The Commonwealth was unable to provide the Court with a clear explanation.  The FCDO expressed the apparent contradiction in the Commonwealth's position well in its brief in opposition to the Motion to Remand:

> If the Commonwealth were to succeed in removing the FCDO, Mr. Harris would be entitled to new representation pursuant to Pennsylvania Rule of Criminal Procedure 904(H), a fact the Commonwealth does not dispute. That representation would be at the expense of the Commonwealth or Lancaster County or both and would result in protracted delay of the PCRA proceedings while new counsel learns the facts and undertakes an investigation into Mr. Harris's federal claims. The sincerity of the Commonwealth's avowed interest in avoiding delay and ensuring the proper expenditure of federal funds pursuant to the CJA can hardly be credited in these circumstances. If the Commonwealth's "vital interest" is in eliminating a formidable adversary in capital case litigation, that is hardly a legally cognizable justification for the disqualification of counsel or for abstention.[69]

---

[68] Astra USA, Inc., 131 S. Ct. at 1349.  Though of no moment to the Court's analysis and without reaching a conclusion on the substantive merits of the Commonwealth's claim, the Court notes a fundamental defect in the Commonwealth's argument.  According to the Commonwealth, § 3599 permits the FCDO to represent a litigant in federal habeas corpus proceedings and "throughout every *subsequent* stage of judicial proceedings." 18 U.S.C. § 3599(a)(2), (e) (emphasis added).  Because federal habeas corpus relief cannot be granted under 28 U.S.C. § 2244 unless a petitioner first exhausts his administrative remedies in state court, the Commonwealth argues that an initial PCRA petition cannot legally be considered to be a "subsequent stage of available judicial proceedings," and therefore, the FCDO representation of a petitioner in these proceedings is prohibited by § 3599.  However, the mere fact that § 3599 does not provide funding for CJA counsel's representation in state PCRA proceedings, does not mean that CJA counsel cannot represent a petitioner in such proceedings, nor does it necessarily suggest that CJA counsel is never entitled to funding for work relating to state proceedings.  Although this is not necessarily fatal to a substantive review of the Commonwealth's claim, it weakens the Commonwealth's position considerably.

[69] Doc. No. 27 at 31.

Here, FCDO counsel are Pennsylvania-barred attorneys who are qualified, capable, and competent to appear on behalf of Mr. Harris in state court, which they have done for more than eight-and-a-half years first by Federal Court appointment and then at Mr. Harris's request without opposition from the Commonwealth.  There is no asserted threat to the integrity and authority of Pennsylvania courts to regulate the practice of law; rather, the Disqualification Motion is made on the purported authority of federal law.  The Court is unable to discern the impetus underlying the filing of the Disqualification Motion in the absence of any discernible state interest, and the lack of such interest supports the ultimate dispositions of the matter before the Court.[70]

In its response to the Motion to Dismiss, the Commonwealth asserts that "[i]f this Court concludes removal was proper, and was inclined to grant FCDO's motion to dismiss, this Court should first allow the Commonwealth to amend its pleading as obviously the Commonwealth did not anticipate that its state court motion in a criminal case would become a complaint in a civil action in federal court."[71]  However, because the Court finds that the Commonwealth lacks standing to assert a claim to enforce § 3599, an amendment would be futile.  Consequently, the Court dismisses this action with prejudice to the reassertion of claims under § 3599.[72]

---

[70]  The Court is puzzled by the Commonwealth's purported interest in "remedying" the FCDO failure to comply with its federal funding obligations.  The remedy for a violation of AO Guidelines is a disallowance or a reduction of payments under the grant award.  Here, however, the Commonwealth seeks disqualification.  Thus, the success of the Commonwealth's Motion does not provide the remedy contemplated by the statute.  This conflict in remedy undermines the Commonwealth's assertion that it seeks to remedy a violation of the statute and further supports the finding that the Commonwealth does not have the authority to enforce this statute as it does not have the authority to provide the proper remedy.

[71]  Doc. No. 10 at 24 n.4 (citing Fed. R. Civ. P. 15(a)(2)).

[72]  At oral argument the Court inquired as to whether Mr. Harris should be represented in these proceedings.  The FCDO responded that "practice within this district, and the absence of any conflict of interest between the FCDO and Harris, suggest that there is no need for Mr. Harris to be separately represented."  Doc. No. 32 at 19.  Since this action has been dismissed the issue is moot.

**IV.    CONCLUSION**

For the foregoing reasons, the Motion to Remand will be denied and the Motion to Dismiss will be granted.  The Disqualification Motion will be dismissed with prejudice.

An appropriate Order follows.